**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ABDULKADIR B., | : |
|    Plaintiff, | : |
| | : |
| v. | :    Civil No. 3:23CV1062(AWT) |
| | : |
| MARTIN O'MALLEY, COMMISSIONER OF | : |
| SOCIAL SECURITY, | : |
|    Defendant. | : |

## RULING AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Abdulkadir B. appeals the Commissioner's final decision denying his application for disability insurance benefits ("DIB") pursuant 42 U.S.C. § 405(g).

The plaintiff filed a motion to reverse the decision of the Commissioner because "the Commissioner's findings are not supported by substantial evidence in the Record as a whole and/or that the Commissioner's decision was not rendered in accordance with the law."  Pl.'s Mot. (ECF No. 17) at 1. The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "the Commissioner's findings are supported by substantial evidence and made by a correct application of legal principles".  Def.'s Mot. (ECF No. 22) at 1.

For the reasons set forth below, the court concludes that the Administrative Law Judge ("ALJ") applied the correct legal principles and that the ALJ's findings are supported by

substantial evidence.  Therefore, the Commissioner's final decision is being affirmed.

## I.  **Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence "is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II.  Discussion

The ALJ's determination of the plaintiff's residual functional capacity ("RFC"), which is at issue, was as follows:

> [T]hrough the date last insured, the claimant had the
> residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b), with the following
> additional limitations: He can occasionally climb ramps and
> stairs and can occasionally climb ladders, ropes, or
> scaffolds. He can occasionally balance, stoop, kneel,
> crouch, and crawl. He must avoid more than brief,
> incidental exposure to vibration, and cannot work at
> unprotected heights or operate machinery having moving
> mechanical parts which are exposed.

R. 512.

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting
> most of the time with some pushing and pulling of arm or
> leg controls. To be considered capable of performing a full
> or wide range of light work, you must have the ability to
> do substantially all of these activities. If someone can do
> light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting
> factors such as loss of fine dexterity or inability to sit

for long periods of time.

20 C.F.R. § 404.1567(b).

The plaintiff contends that the ALJ erred by

(i)     not evaluating medical and nonmedical opinions

        correctly;

(ii)    failing to support three Step 5 conclusions; and

(iii)   ignoring the plaintiff's chronic pain.

See Pl.'s Mem. (ECF No. 17-1) at 19, 25, 28.

## A.   Medical and Nonmedical Opinions

The plaintiff contends that the ALJ improperly weighed the November 1, 2012 (R. 342), January 3, 2013 (R. 340), July 21, 2017 (R. 442-47), and July 23, 2013 (R. 339) medical opinions of orthopedic surgeon W. Jay Krompinger; the medical opinions of internist Sunil Yerragondu, M.D. (R. 1804-08); and the nonmedical opinions of Licensed Marriage and Family Therapist Alma Gusic (R. 1285-89, 1351-55).  See Pl.'s Mem. (ECF No. 17-1) at 19-25. The defendant maintains that "the ALJ's evaluation of opinion evidence was legally proper and supported by substantial evidence."  Def.'s Mem. (ECF No. 22-1) at 21. The court agrees.

The plaintiff filed his application on February 8, 2017 and the parties agree that the treating physician rule applies. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling

4

weight' so long as it 'is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the] case
record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)
(quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v.
Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) (holding that "[a]
treating physician's opinion need not be given controlling
weight where it is not well-supported or is not consistent with
the opinions of other medical experts" where those other
opinions amount to "substantial evidence to undermine the
opinion of the treating physician").  "The regulations further
provide that even if controlling weight is not given to the
opinions of the treating physician, the ALJ may still assign
some weight to those views, and must specifically explain the
weight that is actually given to the opinion." Schrack v.
Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp
v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9
(D. Conn. Mar. 12, 2004)).  It is "within the province of the
ALJ to credit portions of a treating physician's report while
declining to accept other portions of the same report, where the
record contained conflicting opinions on the same medical
condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL

4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing <u>Veino v.</u>
<u>Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical
opinion, the ALJ must consider several factors: the examining
relationship, the treatment relationship (the length, the
frequency of examination, and the nature and extent), evidence
in support of the medical opinion, consistency with the record,
specialty in the medical field, and any other relevant factors.
<u>See</u> 20 C.F.R. § 404.1527(c)(1)-(6) (effective March 27, 2017 for
claims filed before March 27, 2017).  "[A]ll of the factors
cited in the regulations" must be considered to avoid legal
error.  <u>Schaal v. Apfel</u> 134 F.3d 496, 504 (2d Cir. 1998).
Failure to provide "good reasons" for not crediting the opinion
of a claimant's treating physician is a ground for remand.
<u>Snell v. Apfel</u>, 177 F.3d 128, 133-34 (2d Cir. 1999) (citing
<u>Schaal</u>, 134 F.3d at 505).

In determining when there is "inadequate development of the
record, the issue is whether the missing evidence is
significant."  <u>Santiago v. Astrue</u>, 2011 WL 4460206, at *2 (D.
Conn. Sept. 27, 2011) (citing <u>Pratts v. Chater</u>, 94 F.3d 34, 37-
38 (2d Cir. 1996)).  "[T]he burden of showing that an error is
harmful normally falls upon the party attacking the agency's
determination."  <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).
The ALJ "does not have to state on the record every reason

justifying a decision." <u>Brault v. Social Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012).  "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted.'"  <u>Id.</u> (quoting <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)).  In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  <u>Id.</u>

The Code of Federal Regulations provides:

> We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take additional actions, as we explain in paragraphs (b) and (c) of this section.
>
> (a) If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.
>
> (b) If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.

20 C.F.R. § 404.1520b(a), (b) (effective March 26, 2012, to March 26, 2017).

1.   **W. Jay Krompinger, M.D.**

a.   <u>January 3, 2013 and July 23, 2013 Opinions</u>

The plaintiff contends that "[t]he ALJ's failure to give controlling weight to Dr. Krompinger's January 3, 2013 and July 23, 20[1]3 opinions was harmful error".  Pl.'s Mem. (ECF No. 17-1) at 21.  The defendant maintains that the ALJ properly applied 20 C.F.R. § 404.1527 and that substantial evidence supports the ALJ's assessments.  He argues that the ALJ was not required to give controlling weight to an issue reserved for the Commissioner.

As to medical source opinions on issues reserved to the Commissioner, the Code of Federal Regulations provides:

d) . . . . Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(1) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

(1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

(2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from

> medical sources on issues such as whether your
> impairment(s) meets or equals the requirements of any
> impairment(s) in the Listing of Impairments in
> appendix 1 to this subpart, your residual functional
> capacity (see §§ 404.1545 and 404.1546), or the
> application of vocational factors, the final
> responsibility for deciding these issues is reserved
> to the Commissioner.
>
> (3) We will not give any special significance to the
> source of an opinion on issues reserved to the
> Commissioner described in paragraphs (d)(1) and (d)(2)
> of this section.

20 C.F.R. § 404.1527(d) (effective March 27, 2017, for claims

filed before March 27, 2017).

> The ALJ's Decision states:
>
> I give little weight to the opinion of W. Jay Krompinger,
> M.D., who opined in January 2013 that [he] "would assign an
> overall permanency of 27% to the lumbar spine which would
> be inclusive of the permanency from his initial lumbar
> discectomy" (Ex. 2F/7), and in July 2013, noted the
> claimant's "Oswestry Disability Index was taken today. He
> still has significant rating which were 82% pre-op and now
> are 62%["] (Ex. 2F/6), as the conclusion whether the
> claimant is disabled is an issue reserved to the
> Commissioner. These ratings are relevant for purposes of
> workers' compensation, and they have no direct probative
> value with respect to what residual functional capacity the
> claimant has. Therefore, the ratings are given little
> weight, as those standards are not binding on the Social
> Security Administration, which abides by regulations and
> disability standards promulgated under the Act.

R. 514-15.

The plaintiff acknowledges that Dr. Krompinger gave him a

permanency rating "for purposes of the Workers' Compensation

Act". Pl.'s Mem. (ECF No. 17-1) at 20. As the name of the

Oswestry Disability Index reflects, the index rates disability.

The ALJ considered these opinions, found that they warranted "little weight", and provided appropriate, good reasons for that finding.  The ultimate conclusion as to whether a claimant is disabled is an issue reserved to the Commissioner.  The ALJ explained that the ratings are relevant for purposes of workers compensation, where the disability standards are different, and consequently they lack <u>direct</u> probative value for purposes of assessing RFC.  "Disability is defined differently under workers' compensation rules because those assessments do not constitute function by function medical assessments of the ability to perform basic work activities and instead relate to a claimant's ability to perform a particular past job".  <u>Michele B. v. Comm'r of Soc. Sec.</u>, No. 1:20-CV-00975 EAW, 2021 WL 5543940, at *5 (holding that it "was an appropriate consideration for the ALJ to address and consider [the extent to which the 'ratings opinions were provided for worker's compensation purposes'] when assessing the weight to provide a treating physician's opinions") (citing cases).

The plaintiff asserts that "Dr. Krompinger applied the American Medical Association Guides for the evaluation of permanent impairment (in the case of the rating)", but that is immaterial because the "rating" was still one for purposes of the Worker's Compensation Act.  Pl.'s Mem. (ECF No. 17-1) at 20. In addition, as the defendant points out, "the ODI rating is not

a medical opinion that the ALJ needed to evaluate pursuant to §
404.1527, because it is not a reflection of Dr. Krompinger's
judgment, but rather Plaintiff's own self-reports.  See Hejazi
v. Colvin, No. 13-CV-11129-DPW, 2014 WL 3513398, at *12 (D.
Mass. July 11, 2014) ("No more than a vehicle for patients to
self-report their symptoms, the [Modified ODI] was properly
excluded from being classified as a medical opinion. . . .").
Def.'s Mem. (ECF No. 22-1) at 14.

b.  July 21, 2017 Opinion

As to the July 21, 2017 opinion, the plaintiff concedes
that "the standing, walking, and sitting limitations are
internally inconsistent and are not supported by the same
postoperative notes, including the claimant's report that he was
walking over a mile a day in June 2015", but he contends that
the ALJ had a duty to develop the record, seek clarification or
resolve that inconsistency by requesting additional information
from the treating physician.  Pl.'s Mem. (ECF No. 17-1) at 22.

The defendant maintains that "the ALJ properly followed the
regulations and determined that Plaintiff was not disabled
'based on the evidence [he had],' despite the internally
inconsistent opinion from Dr. Krompinger."  Def.'s Mem. (ECF No.
22-1) at 17 (citing 20 C.F.R. § 404.1520b(b)(1)).  The court
agrees.

The ALJ's Decision states:

I give partial weight to the opinion of W. Jay Krompinger,
M.D., who opined in July 2017 that the claimant can lift
and carry 20 pounds occasionally and 10 pounds frequently;
sit, stand, or walk 45 minutes at one time but sit, stand,
or walk 2-3 minutes in an 8-hour day, but [] does not
require a cane; should never climb ladders or scaffolds,
crouch, or crawl, but perform all other postural activities
occasionally; must avoid unprotected heights but can
tolerate frequent exposure to moving mechanical parts and
vibrations (Ex. 5F). While the lifting, carrying, and
postural limitations are generally consistent with and
supported by and consistent with the post-operative
progress notes documenting stable condition and
neurologically intact exams (Exs. 2F-3F), the standing,
walking, and sitting limitations are internally
inconsistent and are not supported by the same
postoperative notes, including the claimant's report that
he was walking over a mile a day in June 2015 (Ex. 2F/3-6).

R. 515.

Thus, the ALJ considered the opinion and gave it partial

weight only because it is internally inconsistent and

inconsistent with the plaintiff's self-reports.  20 C.F.R. §

404.1520b(b) provides:  "If any of the evidence . . ., including

any medical opinion(s), is inconsistent, we will weigh the

relevant evidence and see whether we can determine whether you

are disabled based on the evidence we have."  Id. (effective

March 26, 2012, to March 26, 2017).

The ALJ was not required to develop the record because he

found in the record substantial evidence that enabled him to

make a determination as to whether the plaintiff was disabled.

c.  November 1, 2012 Opinion

The plaintiff contends that "[t]he ALJ's stated reasoning for this 'partial weight' does not . . . make a good deal of sense."  Pl.'s Mem. (ECF No. 17-1) at 22.  The defendant maintains that this argument should be deemed waived because the plaintiff "does not elaborate as to what does not make sense or why" and, in any event, "the ALJ's evaluation . . . was legally proper and supported by substantial evidence."  Def.'s Mem. (ECF No. 22-1) at 21.

The ALJ's Decision states:

I give partial weight to the opinion of W. Jay Krompinger, M.D., who opined in November 2012 that the claimant is limited from lifting over 20 pounds with no repetitive bending (Ex. 2F/9). On one hand, the lifting limitation is consistent with the claimant's post-operative stable condition despite residual pain symptoms. However, the term "no repetitive bending" is somewhat vague, although not inconsistent with the postoperative exam findings of restricted lumbar extension (Ex. 2F).

R. 515.

The ALJ considered and provided good reasons for giving the November 1, 2012 opinion partial weight.  With respect to the lifting limitation, the ALJ explained that it is consistent with the post-operative stable condition despite residual pain symptoms.  However, the ALJ found the term "no repetitive bending" to be "somewhat vague" but did not disregard it because it was not inconsistent with the postoperative exam findings.  Even in context, the phrase "no repetitive bending" leaves a

13

good deal of room for interpretation.  The court agrees with the
defendant that the plaintiff has failed to meet his burden of
showing how any error on the part of the ALJ in coming to this
conclusion was harmful.

### 2.  Sunil Yerragondu, M.D.

The plaintiff contends, with respect to Dr. Sunil
Yerrogondu's opinions, "the deference that is to be given to the
treating physician's opinions is absent from the ALJ's
decision."  Pl.'s Mem. (ECF No. 17-1) at 25.  The defendant
maintains that "the ALJ's rejection of this opinion was proper.
Dr. Yerragondu did not treat Plaintiff during the relevant
period. [] Moreover, the evidence pertinent to the period under
review does not support the extreme limitations assessed."
Def.'s Mem. (ECF No. 22-1) at 19-20.  The court agrees.

The ALJ's Decision states:

> I give little weight to the opinion of Sunil Yerragondu,
> M.D., who opined in March 2023 that he was "not sure" about
> the claimant's walking pace and duration, must lie down one
> hour per day, can sit, stand, or walk 30 minutes at a time,
> but can sit a total of 2 hours and stand and walk a
> total of 2 hours, needs unscheduled breaks of uncertain
> duration, does not require a cane, can rarely lift 15-20
> pounds and occasionally lift up to 10 pounds, would be off-
> task more than 30% of the day and absent 5 days or more per
> month (Ex. 31F). This opinion is unsupported by her
> statement that she treated the claimant since 2017 (Ex.
> 31F/1), which is well after the date last insured, **and also
> lacks supporting medical evidence before the date last
> insured.**

R. 516 (emphasis added).

The ALJ gave little weight to Dr. Yerragondu's opinion for good reasons.  Dr. Yerragondu's treatment of the plaintiff did not start until well after the date last insured and the opinion was not supported by any medical evidence from the period before the date last insured.  The plaintiff asserts that "[i]t seems that no retrospective opinion can ever be credited by the ALJ".  Pl.'s Mem. (ECF No. 17-1) at 25.  That was not a principle applied by the ALJ here.  See Decision at 514 ("While it is at times reasonable to infer that evidence after the DLI was present prior to the date last insured . . . .").

### 3.  Alma Gusic, Licensed Marriage and Family Therapist

The plaintiff acknowledges that Alma Gusic "is not an 'acceptable medical source' whose opinions are entitled to controlling weight" but contends that her opinions that "Mr. B[.]'s conditions were functionally disabling" were "entitled to vastly more weight than the ALJ gave them" because the opinions were "[b]ased on her training and experience[]" and her "clinical judgment" (Pl.'s Mem. (ECF No. 17-1) at 23-24); and that "[a] diagnosis of plaintiff's condition may be made several years subsequent to the onset of disability" (Id. at 24 (citation and internal quotation marks omitted)).

With respect to opinions from medical sources who are not acceptable medical sources, the Code of Federal Regulations provides:

> The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

20 C.F.R. § 404.1527(f)(2) (for claims filed before March 27, 2017 effective March 27, 2017).

The ALJ's Decision states:

> I give little weight to the opinion of Alma Gusic, LMFT, who opined in an undated mental capacity statement that the claimant's impairments lasted since December 31, 2015, and that those impairments resulted in "category III or IV" mental limitations, or precluded performance for 15% or more of an 8-hour workday, such that he would likely be absent from work 5 or more days a month and off-task more than 30% of a workday (Ex. 18F). This opinion is unsupported by her statement that she treated the claimant since August 2018 (Ex. 18F/1), which is well after the date last insured, **and also lacks supporting medical evidence before the date last insured.**
>
> Similarly, I give little weight to Alma Gusic's March 2020 opinion that the claimant has frequent problems in carrying out multi-step instructions, persisting in simple activities, and handling frustration appropriately, as well as reduced ability in interacting with others, sustaining attention, caring for personal and physical needs (Ex. 20F/5-9). This opinion is unsupported by her statement that she treated the claimant since August 2018 (Ex. 18F/1), which is well after the date last insured, **and also lacks supporting medical evidence before the date last insured.**

R. 515 (emphasis added).

The ALJ gave little weight to the opinions of Alma Gusic and gave an explanation of his reasoning that is easy to follow upon review.  Gusic only began treating the plaintiff well after the date last insured, and her opinions were not supported by any medical evidence from the period before the date last insured.  Nothing more was required.

### B.  Step 5 Conclusions

The plaintiff contends that three of the ALJ's Step 5 conclusions are unsupported, as follows:

i.  "There is nothing whatsoever in the Record before the Court to suggest that Mr. B[.] can climb ladders, ropes, or scaffolds for one-third of a work day; or that he can climb ramps and stairs for up to one-third of a work day, or that he can stoop, kneel, crouch, or crawl for up to one third of a workday (each)."  Pl.'s Mem. (ECF No. 17-1) at 26.

ii.  "There is no requirement of a 'sit/stand/walk option' which would allow the individual to sit/stand/walk every 45 minutes (see R. 443 [Dr. Krompinger's 7/21/17 MSS])."  Pl.'s Mem. (ECF No. 17-1) at 26.

iii.  "[T]he evidence demonstrates that Mr. B[.] is incapable of remaining on-task 85% or more of a workday, and that . . . he will be absent from work more than 1.25 days per month. Per the testimony of Mr. Lerner, Mr. B[.] is disabled."  Id. at 28 (emphasis in original).

As to the first point, the ALJ gave Dr. Fette's assessment, which takes these limitations into account (see R. 676-677), "great weight" (R. 514).  The ALJ's Decision states:

I give great weight to the prior administrative findings of the State agency medical consultant on the initial and reconsideration levels, [Ricardo Ramirez, M.D.] and

>Gerald Fette, M.D., who opined in April of 2020 and
>December 2020 that the claimant can perform light work with
>occasional postural movements, that he should avoid hazards
>(heights and machinery) and, at the reconsideration level,
>should also avoid even moderate exposure to vibration.[]
>**These[] opinions are consistent with and supported by the
>medical evidence during the period at issue**, which noted
>some preoperative instances of positive straight leg
>raising and asymmetric reflexes but generally intact motor
>strength and sensation, and that his spine disorder was
>generally stable after surgery, such that he was able to
>walk over a mile a day, while the environmental limitations
>reasonably account for his otherwise stable hardware and
>potentially sedating side effects of his pain medications
>(Exs. 1F-2F).

R. 514 (emphasis added).

As to the second point, as discussed above, the ALJ
appropriately rejected Dr. Krompinger's November 21, 2017
opinion.  It was not necessary for the ALJ to pose hypothetical
questions about it.  See Paula L. v. Comm'r of Soc. Sec., No.
20-CV-1224-DB, 2021 WL 3549438, at *8 (W.D.N.Y. Aug. 11, 2021)
("[T]he ALJ's RFC finding for light work is supported by
substantial evidence, and therefore, it was not necessary for
the ALJ to pose hypothetical questions containing limitations
that were not credibly established by the record.").

As to the third point, the plaintiff simply relies on
hypotheticals posed to Henry Lerner.  At the hearing, the ALJ
asked about off-task time:

>Q  Sir, . . . if a hypothetical person is off task 15%
>of the time is there any jobs in the national economy such
>person can perform?

> A . . . . an individual off task 15% of the workday
> would not be able to sustain any employment that I am aware
> of.

R. 568.  The plaintiff's attorney asked about absences:

> Q . . . . [W]hat is the tolerance for somebody
> showing up late or leaving early for a shift in these jobs?

> A . . . . Leaving early from -- from work or
> arriving late from work is -- basically falls into that
> realm of off task and absence. . . . if an individual is
> absent more than about one-and-a-quarter days per month
> it's going to have a negative impact on their
> employability, and if it's regular they will be terminated.

R. 572.  The plaintiff does not cite to any evidence to support

his contention that the plaintiff is incapable of remaining on-

task 85% or more of a workday and that he will be absent from

work more than 1.25 days per month.  Therefore, he has not met

his burden of showing there was an error, much less one that was

harmful.

In any event, the ALJ's RFC determination is supported by

substantial evidence.  The ALJ relied on Dr. Ramirez's and Dr.

Fette's assessments, Dr. Krompinger's November 10, 2012 release

of the plaintiff to light work, objective evidence consistent

with normal neurological functioning, evidence of pain control

and stability, and the plaintiff's reports with respect to

regular walking.

### C.  Pain

The plaintiff contends that "[t]he ALJ improperly waived .

. . to one side" evidence of "chronic, intractable pain".  Pl.'s

Mem. (ECF No. 17) at 28, 29.  The defendant maintains that the
plaintiff has not shown "that the record so strongly supports a
finding that Plaintiff's chronic pain precluded work consistent
with the RFC that a reasonable factfinder would have to agree"
(Id. at 10.), nor that "the record fails to support the ALJ's
conclusion" (Id.).  The court agrees.

Section 404.1529 of the Code of Federal Regulations
provides:

> When the medical signs or laboratory findings show that you
> have a medically determinable impairment(s) that could
> reasonably be expected to produce your symptoms, such as
> pain, we must then evaluate the intensity and persistence
> of your symptoms so that we can determine how your symptoms
> limit your capacity for work. In evaluating the intensity
> and persistence of your symptoms, we consider all of the
> available evidence, including your history, the signs and
> laboratory findings, and statements from you, your treating
> or nontreating source, or other persons about how your
> symptoms affect you. We also consider the medical opinions
> of your treating source and other medical opinions . . . .
> . . . .
> Since symptoms sometimes suggest a greater severity of
> impairment than can be shown by objective medical evidence
> alone, we will carefully consider any other information you
> may submit about your symptoms. The information that you,
> your treating or nontreating source, or other persons
> provide about your pain or other symptoms (e.g., what may
> precipitate or aggravate your symptoms, what medications,
> treatments or other methods you use to alleviate them, and
> how the symptoms may affect your pattern of daily living)
> is also an important indicator of the intensity and
> persistence of your symptoms. Because symptoms, such as
> pain, are subjective and difficult to quantify, any
> symptom-related functional limitations and restrictions

which you, your treating or nontreating source, or other
persons report, which can reasonably be accepted as
consistent with the objective medical evidence and other
evidence, will be taken into account . . . . Factors
relevant to your symptoms, such as pain, which we will
consider include:

>   (i) Your daily activities;
>   (ii) The location, duration, frequency, and intensity
>   of your pain or other symptoms;
>   (iii) Precipitating and aggravating factors;
>   (iv) The type, dosage, effectiveness, and side effects
>   of any medication you take or have taken to alleviate
>   your pain or other symptoms;
>   (v) Treatment, other than medication, you receive or
>   have received for relief of your pain or other
>   symptoms;
>   (vi) Any measures you use or have used to relieve your
>   pain or other symptoms (e.g., lying flat on your back,
>   standing for 15 to 20 minutes every hour, sleeping on
>   a board, etc.); and
>   (vii) Other factors concerning your functional
>   limitations and restrictions due to pain or other
>   symptoms.

20 C.F.R. § 404.1529 (c)(1), (c)(3) (effective June 13, 2011, to

March 26, 2017).

The ALJ's Decision states:

As for the claimant's statements about the intensity,
persistence, and limiting effects of his or her symptoms,
they are inconsistent because the objective medical
evidence generally does not support the alleged loss of
functioning.

Due to the claimant filing only a Disability Insurance
Benefits application, he must establish disability on or
before that date in order to be entitled to a period of
disability and disability insurance benefits. I note that
much of the medical evidence of record was dated after the
date last insured of December 31, 2015 (e.g., Exs. 4F-18F;

20F-25F; 27F-29F; 31F), which is not relevant to a finding of disability. **While it is at times reasonable to infer that evidence after the DLI was present prior to the date last insured, the overall medical evidence, activities of daily living, and history of minimal or conservative treatment after surgery weigh against that inference. The evidence prior to the date last insured is more persuasive** in this case and demonstrates the claimant was able to perform the work at the light exertional level with the postural and environmental limitations above.

As background, the treatment records note that in 2005-2006, prior to the alleged onset date, the claimant underwent conservative orthopedic treatment and a L5-S1 diskectomy for back pain and left leg symptoms on December 12, 2005 arising from a 2004 back injury (Exs. 2F/36; 3F/59-67; 30F/6-15, 62-68). In December 2010, around the alleged onset date, he sustained a workplace injury that exacerbated his back pain symptoms and triggered right leg pain, and presented to an orthopedist the same month (Ex. 2F/36). Imaging showed narrowing of the L5-S1 segment, while a physical exam noted positive straight leg raising on the right, but no motor weakness and symmetrical reflexes of the lower extremities, and he was conservatively treated with an Aspen brace, soma, and Decadron (Ex. 2F/36-37).

The following month, he presented to the emergency room with complaints of back pain worsening, radiating into his right leg, and affecting ambulation, despite tramadol, but exam findings noted strong equal muscle strength in both legs despite localized spinal tenderness, painful straight leg raising on the right side, and intermittent numbness in the right lower extremity, and he was given morphine and valium (Ex. 1F/12-14). At subsequent orthopedic follow-up visits in 2011, physical examinations noted positive straight leg raising test bilaterally, absent or decreased ankle reflexes, but generally no motor weakness in plantar and dorsiflexion, while a lumbar spine MRI showed a small annular tear at L5-S1, but with no significant herniation or foraminal stenosis on the right (Ex. 2F/33-35). After trialing conservative treatments of Ultram, epidural steroid injection, oxycodone, amitriptyline, Boston brace, and tramadol, his orthopedist recommended an interbody arthrodesis at L5-S1 with decompression of the left sided S1 nerve root, after a L5-

S1 lidocaine discogram provided only temporary relief in late 2011 (Ex. 2F/19-33).

**On January 23, 2012, the claimant underwent a L5-S1 anterior-posterior fusion with pedicle screw fixation, followed with pain medication, and reported significant improvement two days afterwards** (Ex. 1F/5-6; 2F/18). Postoperative notes in 2012 indicated the claimant reported dysesthesias in both legs and increasing left leg pain, for which he was prescribed Neurontin, hydrocodone, Lyrica, Celebrex, physical therapy, aquatic therapy, and sacroiliac injection while his orthopedist noted asymmetric ankle reflexes, limited straight leg raising, and restricted range of motion (Ex. 2F/9-17). Meanwhile, an April 2012 lumbar spine MRI only noted a small foraminal bulge at L4-5, but no residual nerve compression at L5-S1 (Ex. 2F/14). By November 2012, his orthopedist released him to light duty work with no lifting over 20 pounds and no repetitive bending (Ex. 2F/9), and in January 2013, he was noted to be functionally stable from the standpoint of his lumbar spine (Ex. 2F/7). **Later that year, spinal imaging showed a solid fusion across the L5-S1 articulation and exams noted only slightly restricted extension, while his residual symptoms were maintained on Lyrica and amitriptyline at biannual orthopedic visits through June 2015, when he reported walking over a mile a day** (Ex. 2F/3-6).

As for the opinion evidence, I give great weight to the prior administrative findings of the State agency medical consultant on the initial and reconsideration levels, [Ricardo Ramirez, M.D.] and Gerald Fette, M.D., who opined in April of 2020 and December 2020 that the claimant can perform light work with occasional postural movements, that he should avoid hazards (heights and machinery) and, at the reconsideration level, should also avoid even moderate exposure to vibration.[] These[] opinions are consistent with and supported by the medical evidence during the period at issue, which noted some preoperative instances of positive straight leg raising and asymmetric reflexes but generally intact motor strength and sensation, and that his spine disorder was generally stable after surgery, such that he was able to walk over a mile a day, while the environmental limitations reasonably account for his otherwise stable hardware and potentially sedating side effects of his pain medications (Exs. 1F-2F).

R. 513-14. (emphasis added).

Thus, the ALJ considered the evidence with respect to pain and based his finding on the overall medical evidence, activities of daily living, and the history of minimal or conservative treatment after surgery.  The ALJ's finding was based on substantial evidence, specifically: much of the medical evidence of record was dated after the date last insured; during the relevant period physical exams noted no motor weakness, symmetrical reflexes and strong, equal muscular strength; MRIs showed no significant herniation or foraminal stenosis and no residual nerve compression; significant improvement was reported two days after anterior-posterior fusion with pedicle screw fixation followed by pain medication; the orthopedist released the plaintiff to light duty work with no lifting over 20 pounds and no repetitive bending, and by January 2013, he was noted to be functionally stable; spinal imaging showed a solid fusion across the L5-S1 articulation and exams noted only slightly restricted extension, while the plaintiff's residual symptoms were maintained on Lyrica and amitriptyline at biannual orthopedic visits; the plaintiff's activities of daily living included walking over a mile a day; and the state agency medical consultants opined that the plaintiff can perform light work with occasional postural movements, that he generally had intact motor strength and sensation, and that his spine disorder was

generally stable after surgery such that he was able to walk over a mile a day.

Where there is supporting substantial evidence, the court must defer to the ALJ, even where substantial evidence may also support the plaintiff's position.

**III.  <u>Conclusion</u>**

For the reasons set forth above, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 22) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

The Clerk's Office is instructed that, if any party subsequently appeals to this court the decision made after this remand, that Social Security appeal shall be assigned to the undersigned (as the District Judge who issued the ruling that remanded the case).

It is so ordered.

Dated this 21st day of August 2024, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
